## INTERSTATE COMMERCE COMMISSION *v.* LEHIGH VAL. R. Co.[1]

*(Circuit Court, E. D. Pennsylvania. January 15, 1892.)*

1. INTERSTATE COMMERCE COMMISSION—FINDING OF FACTS.

The finding of facts in a report by the interstate commerce commission has no greater weight where the commission itself proceeds by petition under section 16, 24 St. at Large, p. 384, to enforce obedience to its orders, than where an individual aggrieved so proceeds, and is not conclusive evidence of such facts. *Kentucky, etc., Bridge Co.* v. *Louisville, etc., R. Co.,* 37 Fed. Rep. 567, followed.

2. SAME—DISOBEDIENCE OF ORDERS—INJUNCTION.

A preliminary injunction to restrain a carrier from disobeying an order of the interstate commerce commission will not be granted in proceedings under section 16, 24 St. at Large, p. 384, as amended, when the answer denies the facts on which the order was based.

In Equity. Motion for preliminary injunction. Petition by the interstate commerce commission to restrain the Lehigh Valley Railroad Company from exacting an alleged excessive rate for transporting coal from the mines to Elizabethport. Upon complaint by Coxe Bros., miners and shippers of anthracite coal, the interstate commerce commission had made an order, after hearing both parties, establishing rates for the carriage of coal from the mines to Elizabethport, lower than the rates previously charged, and declaring the latter excessive. The Lehigh Valley Company continued to charge its old rates, and this petition was filed to enforce obedience to the order. Motion denied, without prejudice to complainant to file replication, and proceed to proofs.

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

*Simon Stern, John R. Read,* and *S. P. Wolverton,* for complainant.

The case of *Kentucky, etc., Bridge Co.* v. *Louisville, etc., R. Co.,* 37 Fed. Rep. 567, was decided under the misapprehension that judicial power could not be granted when those appointed to exercise it were not appointed during good behavior. Such grants have been declared constitutional in *Insurance Co.* v. *Canter,* 1 Pet. 515; *McAllister* v. *U. S.,* 141 U. S. 174, 11 Sup. Ct. Rep. 949. When a disciplinary body, created by statute, comes to a conclusion, the courts, in enforcing its conclusion, will only inquire whether the party has had a fair trial, and the rules governing the body have been complied with, and will not try the question over again. *Loubat* v. *Le Roy,* 40 Hun, 546; *People* v. *Commissioners,* 93 N. Y. 97. The decision of a special tribunal, having authority to decide certain matters in the course of its duties, is final. *Johnson* v. *Towsley,* 13 Wall. 72; *Marques* v. *Frisbie,* 101 U. S. 473.

*John G. Johnson,* for respondents.

ACHESON, Circuit Judge. Upon the complaint of Coxe Bros. & Co. against the Lehigh Valley Railroad Company made to the interstate commerce commission, pursuant to the act of congress entitled "An act to regulate commerce," approved February 4, 1887, (24 St. at Large, p. 379,) and the amendatory acts of March 2, 1889, and February 10, 1891, (25 St. at Large, p. 855; 26 St. at Large, p. 743,) the said commission found and decided that the rates established by the said railroad company, and in force over and upon its lines of railroad for the transportation of anthracite coal from the Lehigh anthracite coal region, in the state of Pennsylvania, to Perth Amboy, in the state of New Jersey, were unreasonable and unjust; and the commission fixed a scale of maximum rates of freight for such transportation, and issued an order requiring the said railroad company to cease and desist, from and after a certain specified date, from making any charge in excess of the rates so determined upon by the commission. The railroad company having neglected and refused to comply with this order, the interstate commerce commission, proceeding under the sixteenth section of the law as amended, applied by petition to this court, sitting in equity, praying for a writ of injunction or other proper process, mandatory or otherwise, to restrain said railroad company from further violation of and disobedience to the said order of the commission. To this petition the railroad company filed an answer, which, besides other defenses of a legal character therein raised, denies that the rates established and charged by it for the transportation of anthracite coal, as aforesaid, were unreasonable and unjust, and alleges that the same were and are reasonable and just rates; and the answer further avers that all the findings of fact by the commission, which led it to the conclusion that the rates charged by the defendant were unreasonable and unjust, were erroneous, and were not in accordance with the evidence. The case was set down for hearing, and has been argued upon the petition and answer.

Several questions of great importance, both to the parties to this litigation and to the public, are here involved; but at this time we deem it

necessary to consider only one of these questions, namely: In this proceeding instituted by the interstate commerce commission to enforce its order against the defendant railroad company, what effect is to be given to the findings of fact by the commission embodied in its written report, and upon which its said order was based? It has been argued earnestly and ably by counsel representing the interstate commerce commission that the present proceeding is to be regarded as a controversy between the commission and the defendant company, distinct from the original case between Coxe Bros. & Co. and the defendant; that the original case is not here retriable upon its merits, however it might be were Coxe Bros. & Co. the petitioners; that while the court may look into the testimony taken by the commission to see whether there is any justification for its decision, yet, if the commission acted upon competent evidence, and within the scope of its authority, and the defendant had a fair trial before it, the findings of fact by the commission are not here open to question. but must be accepted as conclusive. But, as respects the weight to be given to the findings of fact, the statute, we think, affords no ground for making any distinction between an application to the court by the commission itself and such an application by the original complainants, at whose instance the order sought to be enforced was made. As we shall hereinafter see, the law provides that application to the court for the enforcement of any such order may be made either by the commission or by any company or person interested in the order. No sound reason exists for according greater efficacy to the findings of fact in the one case than in the other, and the statute does not recognize any such distinction. What force, then, have the findings of fact upon which the petitioner here relies? If the acts of congress had been silent as to the effect to be given to findings of fact by the interstate commerce commission, it might, perhaps, have been reasonably inferable that the legislative intention was that those findings should fall within the general rule that, where the law has confided to a special tribunal the authority to hear and determine certain matters in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all other tribunals. But any such implication is excluded by the express terms of the interstate commerce law. Section 14 of the act, as amended, after providing that whenever an investigation shall be made by the commission it shall be its duty to make a report in writing in respect thereto, which shall include the "findings of fact" upon which the conclusions of the commission are based, declares: "And such findings, so made, shall thereafter, in all judicial proceedings, be deemed *prima facie* evidence as to each and every fact found." Now, clearly, this provision is quite irreconcilable with the idea that in an application like the present one the findings of fact by the commission operate conclusively. But, furthermore, section 16, as amended, provides as follows:

"That whenever any common carrier, as defined in and subject to the provisions of this act, shall violate or refuse or neglect to obey or perform any lawful order or requirement of the commission created by this act, not

.founded upon a controversy requiring a trial by jury, as provided by the seventh amendment to the constitution of the United States, it shall be lawful for the commission, or for any company or person interested in such order or requirement, to apply in a summary way, by petition, to the circuit court of the United States, sitting in equity in the judicial district in which the common carrier complained of has its principal office, or in which the violation or disobedience of such order or requirement shall happen, alleging such violation or disobedience, as the case may be; and the said court shall have power to hear and determine the matter; * * * and said court shall proceed to hear and determine the matter speedily as a court of equity, and without the formal pleadings and proceedings applicable to ordinary suits in equity, but in such manner as to do justice in the premises; and to this end such court shall have power, if it think fit, to direct and prosecute, in such mode and by such persons as it may appoint, all such inquiries as the court may think needful to enable it to form a just judgment in the matter of such petition; and on such hearing the findings of fact in the report of said commission shall be *prima facie* evidence of the matters therein stated; and if it be made to appear to such court, on such hearing or on report of any such person or persons, that the lawful order or requirement of said commission drawn in question has been violated or disobeyed, it shall be lawful for such · court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation or disobedience of such order or requirement of said commission, and enjoining obedience to the same."

This section further provides for proceedings on the law side of the court where the matters involved are founded upon a controversy requiring a trial by jury, and enacts that "at the trial the findings of fact of said commission, as set forth in its report, shall be *prima facie* evidence of the matters therein stated." Thus has congress most carefully defined and limited the e ̣ct of the findings of fact by the interstate commerce commission in all judicial proceedings, whether at law or in equity.

But then again, upon an analysis of the above-quoted provisions of section 16, it is demonstrable that in such a case as this it is the . duty of the court to investigate the merits of the whole controversy, and form an independent judgment. The court, upon a petition alleging the violation of a "lawful" order, is to proceed to "hear and determine the matter as a court of equity in such manner as to do justice in the premises;" and to this end it may prosecute in such mode and by such persons as it may appoint all "needful inquiries" to enable it to "form a just judgment" in the matter of the petition; and, finally, "on .such hearing the findings of fact in the report of said commission shall be *prima facie* evidence of the matters therein stated." Nothing can be clearer than that the findings by the commission are not here decisive of the questions of fact. We have only to add that our conclusion is in harmony with that of the circuit court in the case of *Kentucky, etc., Bridge Co.* v. *Louisville, etc., R. Co.*, 37 Fed. Rep. 567. In view, then, of the denials and averments of the answer, the present motion must be denied, but without prejudice to the right of the petitioner to file a replication; and it is so ordered.

BUTLER, District Judge, concurs.